IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| David Griffith and William Coleman, )<br>as Trustee of the William Coleman )<br>Revocable Trust, individually and on )<br>behalf of all others similarly situated, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>JMC Communities, Inc.; JMC Homes of )<br>South Carolina, LLC; Patrick Square, LLC )<br>f/k/a Digital Development, LLC; Alpha )<br>Omega Construction Group, Inc.; )<br>Gorze, Inc.; Cothran Landscapes and )<br>Grading, LLC; Gentry Services, LLC a/ka/ )<br>Gentry Brothers Services, LLC; Tiny Bill )<br>Swaney d/b/a Swaney Masonry; Solid )<br>Rock Construction Services LLC; H&H )<br>Concrete, LLC; Maria Construction Inc.; )<br>F&V Framing, LLC; Five Star Construction, )<br>Inc.; Davis Framing, LLC; Ashley Cothran )<br>d/b/a/ Cothran Custom Homes, LLC; UFP )<br>Mid-Atlantic, LLC; Builders First Source, )<br>Inc. a/k/a Builders FirstSource Atlantic )<br>Group, LLC a/k/a Builders FirstSource )<br>Southeast Group, LLC; RC Johnson, LLC; )<br>Gunter Heating and Air Conditioning of SC, )<br>LLC; 84 Lumber Company, LP; Dogwood )<br>Exteriors, LLC; H&R Drywall, Inc.; )<br>Cristobal and Painters, LLC; Willow Tree )<br>Landscaping, Inc.; Harbin Lumber )<br>Company, Inc.; Soto HVAC, LLC; )<br>Riverside Landscaping, LLC; International )<br>Construction Services, Inc.; Palmetto )<br>Grading and Drainage, Inc.; Jane Does )<br>#1–10; and John Does #27–50; ) | C/A No. 8:24-cv-06078-DCC<br><br><br><br><br><br><br><br>**OPINION AND ORDER** |

1

```
                                        )
        Defendants.                     )
                                        )
_____)
```

Plaintiffs David Griffith ("Griffith") and William Coleman as trustee of the William Coleman Revocable Trust ("Coleman") filed a putative class action in South Carolina state court against a host of defendants, including JMC Communities, Inc. ("JMC Communities"); JMC Homes of South Carolina, LLC ("JMC Homes"); and Patrick Square, LLC (collectively "Developer Defendants"). The Developer Defendants removed the case to federal court, invoking jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Plaintiffs now move to remand the action to state court, arguing (1) that removal was untimely and (2) that CAFA's so-called "local controversy" exception applies.

## I. BACKGROUND

Plaintiffs are homeowners in Patrick Square, a planned community in Clemson, South Carolina comprising over 300 single-family homes, paired homes, and townhomes. The Developer Defendants oversaw the development of Patrick Square: JMC Homes served as the general contractor; Patrick Square, LLC handled home sales; and JMC Communities provided "administrative and management support services." ECF No. 14-1 at 3–4.

In April 2024, Griffith filed a class-action complaint in the Pickens County Court of Common Pleas against the Developer Defendants and unnamed Doe defendants involved in the "design, development, construction, marketing, sale[,] and/or attempted repair" of homes in Patrick Square. ECF No. 1-1 at 9. The complaint alleged that Patrick Square homes are plagued with construction defects that have led to water intrusion and

drainage issues. *Id.* at 9–10. The complaint attributed these problems to "substandard site work and drainage infrastructure," defective exterior cladding and framing, and improperly installed bricks and shingles. *Id.* at 9. It also alleged that Defendants were negligent in failing "to properly design and construct" certain components of the homes, including "exterior building envelope[s], foundations, exterior cladding systems, windows, doors, roofs, [and] framing." *Id.* at 15. Griffith proposed a class of "[a]ll persons and entities that own, in whole or in part, a home within the Patrick Square development," which he expected to exceed 500 members. *Id.* at 11. And for relief, he sought an unspecified amount of actual, consequential, and punitive damages, as well as attorneys' fees and costs, on behalf of himself and the putative class. *Id.* at 17–18.

In September 2024, Griffith filed the operative amended complaint. ECF No. 1-2. The amended complaint added Coleman as a Plaintiff and replaced John Does 1–26 with the names of 26 subcontractors. *Id.* at 6, 9–13. It also expanded the "Factual Allegations" section by specifying the type of work each subcontractor allegedly performed. *Id.* at 14–16. Otherwise, the amended complaint is largely identical to the original.

On October 24, 2024, the Developer Defendants removed this action to federal court, asserting that all three CAFA requirements are satisfied — that is, the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. ECF No. 1 at 3–4. On November 7, 2024, Plaintiffs moved to remand. ECF No. 19. They argue that removal was untimely under 28 U.S.C. § 1446(b) and that the local controversy exception to CAFA jurisdiction applies. ECF No. 19-1 at 12, 13. Plaintiffs' motion is fully briefed and ready for review. ECF Nos. 45, 54.

3

## II.  APPLICABLE LAW

### A.  CAFA Jurisdiction and Removal

Congress enacted CAFA in 2005 to address perceived "abuses of the class action device" and to ensure "[f]ederal court consideration of interstate cases of national importance."  Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2, 119 Stat. 4, 4–5.  "CAFA relaxes diversity jurisdiction requirements and provides district courts authority over class actions with (1) more than 100 class members, (2) an amount in controversy exceeding $5,000,000[,] and (3) minimally diverse parties."  *Scott v. Cricket Comms., LLC*, 865 F.3d 189, 194 (4th Cir. 2017).  In removing under CAFA, the defendant bears the burden of establishing these requirements.  *Johnson v. Advance Am.*, 549 F.3d 932, 935 (4th Cir. 2008).

With one exception not relevant here, defendants removing under CAFA must follow the time limits set forth in the general removal statute, 28 U.S.C. § 1446.  *See* 28 U.S.C. § 1453(b).  Section 1446 identifies two 30-day windows for removal.  First, under subsection (b)(1), a defendant has 30 days to file a notice of removal after receiving "a copy of the initial pleading setting forth the claim for relief."  *Id.* § 1446(b)(1).  But "if the case stated by the initial pleading is not removable," then, under subsection (b)(3), a case may be removed within 30 days after the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  *Id.* § 1446(b)(3).

### B.  The Local Controversy Exception

Despite CAFA's broad grant of jurisdiction, Congress provided several exceptions to ensure that state courts can continue to adjudicate "class actions that have a truly local

focus." S. Rep. No. 109-14, at 28 (2005). Under the local controversy exception, a district court "shall decline to exercise jurisdiction"

> (i) over a class action in which—
>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant is a defendant—
>>
>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>
>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>
>>> (cc) who is a citizen of the State in which the action was originally filed;
>>
>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A).

The burden of establishing this exception lies with the party seeking remand. *Bartels by and through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 681 (4th Cir. 2018).

### III. DISCUSSION

Plaintiffs' motion raises two issues: (1) whether the Developer Defendants timely removed the case within any applicable 30-day removal window and (2) whether CAFA's local controversy exception requires remand. The Court addresses these issues in turn.

**A. Timeliness of Removal**

At the outset, the Court notes that Plaintiffs challenge only the timeliness of the Developer Defendants' removal, not whether the requirements for CAFA jurisdiction are

met.  This distinction is important because "whether a basis for removal exists and whether removal is timely are separate questions."  *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 146 (2d Cir. 2014); *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 n.3 (9th Cir. 2013) ("[W]hether a defendant can establish that federal jurisdiction exists and the question of when the thirty-day time period begins are not two sides of the same coin."); *see generally Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 398–99 (5th Cir. 2013) (distinguishing between "amount disputes" under 28 U.S.C. § 1332 and "timeliness disputes" under 28 U.S.C. § 1446).  As the Seventh Circuit explains, "[T]he timeliness inquiry is limited to . . . examining [the] contents of the clock-triggering pleading or other litigation paper."  *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 825 (7th Cir. 2013).  "[T]he question is whether *that document,* on its face or in combination with earlier-filed pleadings, provides specific and unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable."  *Id.* (emphasis in original); *see also Skidmore v. Norfolk S. Rw. Co.*, 1 F.4th 206, 210 (4th Cir. 2021) ("[A] defendant's 30-day removal clock doesn't begin until the basis for removal jurisdiction becomes 'apparent within the four corners of the initial pleading or subsequent paper.'" (quoting *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997))).

In moving for remand, Plaintiffs argue that the 30-day removal clock began upon service of the original complaint, thus rendering the Developer Defendants' October 2024 removal untimely.[1]  ECF No. 19-1 at 6.  Alternatively, they argue that, at the latest, the clock started on June 12, 2024, when their counsel emailed inspection reports to the

---

[1] JMC Homes was served on April 29, 2024, while JMC Communities and Patrick Square, LLC, accepted service on May 16, 2024.  ECF No. 19-1 at 6.

6

Developer Defendants' counsel. These reports detailed "numerous defects" in Griffith's and Coleman's homes and outlined "the scope of repair required to correct [those] defects." ECF No. 54 at 5. The Court disagrees. Neither the original complaint nor the June 12 email provided the Developer Defendants with enough information from which they could ascertain removability under CAFA.

The original complaint satisfied CAFA's numerosity requirement by alleging that more than 300 homes at Patrick Square were affected and that the class likely exceeded 500 members. ECF No. 1-1 at 11. But it did not reveal on its face that minimal diversity existed or that the amount in controversy exceeded $5 million. As for diversity, although the original complaint identified Griffith as a South Carolina citizen and JMC Communities as a Florida corporation, it did not allege where JMC Communities maintains its principal place of business. *Id.* at 5–6; *see also* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated *and* of the State or foreign state where it has its principal place of business . . . ." (emphasis added)). Because of this omission, "the case '*stated* by the initial pleading' [was] not removable." *Lovern*, 121 F.3d at 162 (emphasis in original); *see Hawes v. Cart Prods., Inc.*, 386 F.Supp.2d 681, 685 (D.S.C. 2005) ("Because the complaint did not reveal where U.S.L. and Hunter's Hideout were incorporated or where they maintained their principal places of business . . . it was not apparent on the face of the complaint whether diversity existed. Further, whether U.S.L. knew of the state in which Hunter's Hideout was incorporated or maintained its principal place of business is irrelevant."); *City of Albion v. Guar. Nat'l Ins. Co.*, 35 F.Supp.2d 542, 547 (W.D. Mich. 1998) ("In this case,

the complaint did not inform Defendants that diversity existed because the City did not allege each Defendant's principal place of business.").

The original complaint also did not "affirmatively reveal[] on its face that [Plaintiffs] [were] seeking damages in excess of [$5 million]," *Mumfrey*, 719 F.3d at 399 (emphasis and internal quotation marks omitted), or provide "sufficient facts from which damages [could] be readily calculated," *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 69 (1st Cir. 2014). Instead, it merely alleged that Patrick Square homeowners have experienced water intrusion and drainage issues caused by various defects and, as a result, have suffered unspecified damages. ECF No. 1-1 at 9–11, 17–18. To be sure, defendants are expected to "apply a reasonable amount of intelligence in ascertaining removability," which may involve "[m]ultiplying figures clearly stated in a complaint." *Kuxhausen*, 707 F.3d 1136 at 1140 (internal quotation marks omitted). But here the original complaint gave no indication of what it would cost to repair the alleged defects at any of the homes. Without even an estimate, calculating the amount in controversy would have been pure guesswork. Thus, the original complaint did not trigger § 1446(b)(1)'s removal clock.

Nor did the June 12 email trigger the second removal window under § 1446(b)(3). Although an email may qualify as an "other paper" under the removal statute, *see, e.g.*, *Wright v. Dollar Gen. Store No. 4722/Dolgencorp, LLC*, No. 4:13-1447-MGL, 2014 WL 509214, at *3 (D.S.C. Feb. 7, 2014), neither the June 12 email nor the attached reports "inform[ed] [the Developer] Defendants 'to a substantial degree of specificity' that the amount in controversy exceeded $5 million," *McLaren v. UPS Store Inc.*, 32 F.4th 232, 237 (3d Cir. 2022) (quoting *Foster v. Mutual Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 53 (3d Cir. 1993)). The reports may have given the Developer Defendants a better sense

8

of the extent of the defects in Griffith's and Coleman's homes, but they did not address the cost to repair those issues.  The Developer Defendants were not, as Plaintiffs seem to suggest, required to estimate what the repairs would cost and then extrapolate those figures across the putative class to determine the amount in controversy.  *See Romulus*, 770 F.3d at 75 ("The defendant has no duty . . . to investigate or to supply facts outside of those provided by the plaintiff."); *Kuxhausen*, 707 F.3d at 1141 (holding that a defendant is "not obligated to supply information which [the plaintiff] ha[s] omitted"); *see also Lovern*, 121 F.3d at 162 ("[W]e will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when.").  Because the grounds for CAFA removal were not "apparent within the four corners" of the June 12 email or its attachments, § 1446(b)(3)'s removal clock was not triggered.  *Lovern*, 121 F.3d at 162.

In sum, the Court finds that the documents identified by Plaintiffs did not trigger either of the removal periods in § 1446(b).  As a result, the Developer Defendants' removal was not untimely.

## B.  Local Controversy Exception

The local controversy exception requires remand if Plaintiffs establish that (1) greater than two-thirds of the class members are South Carolina citizens; (2) at least one defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted" is a South Carolina citizen; (3) the principal injuries complained of occurred in South Carolina; and (4) "during the 3-year period preceding the filing of the class action, no other class action has been filed asserting the

9

same or similar factual allegations" against any of the defendants. See 28 U.S.C. § 1332(d)(4)(A).

### 1. Greater than two-thirds of the proposed class are South Carolina citizens.

For individuals, citizenship is determined by domicile, which requires both physical presence in a state and an intent to remain there indefinitely. *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998); *Johnson v. Advance Am.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008). Factors that indicate intent include "voter registration; current residence; the location of real and personal property; location of bank and brokerage accounts; membership in clubs, churches, or other associations; place of employment or business; driver's license and automobile registration; and the state to which a person pays taxes." *Cricket Comms.*, 865 F.3d at 195. "No single factor is dispositive." *Id.*

"The party seeking to invoke [the] [local controversy] exception must provide evidence (not merely assertions) that makes it more likely than not that more than two-thirds of the proposed class consists of citizens of the relevant state." *Ellis v. Montgomery Cnty.*, 267 F.Supp.3d 510, 516 (E.D. Pa. 2017) (emphasis omitted). "The citizenship inquiry under the local controversy exception should not be exceptionally difficult, but instead practical and reasonable." *Mason v. Lockwood, Andrews & Newman, P.C.*, 842 F.3d 383, 392 (6th Cir. 2016) (internal quotation marks and citation omitted). "This pragmatic approach obviates the need to ascertain absolute proof of domicile for every class member, which would make the application of CAFA's citizenship requirements 'unworkable' from a practical standpoint." *Ellis*, 267 F.Supp.3d at 516 (quoting *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 816 (5th Cir. 2007)).

Here, Plaintiffs have presented evidence showing that 443 of the 604 proposed class members, or 73.3%, own a home in Patrick Square that is taxed at the 4% rate for primary, owner-occupied residences. ECF No. 54 at 7; *see also* ECF Nos 19-7, 19-8. The Developer Defendants dispute the probative value of this evidence, arguing that residency is not enough to prove citizenship. ECF No. 45-1 at 11–12. While that may be true as a general matter, *see Carroll Carolina Oil Co.*, 145 F.3d at 663 ("[C]itizenship cannot be inferred from allegations of mere residence, standing alone."), the Court finds that Plaintiffs' evidence makes it more likely than not that more than two-thirds of the proposed class are South Carolina citizens.

To qualify for the 4% property tax assessment ratio in South Carolina, a homeowner "must have actually owned and occupied the residence as his legal residence and been domiciled at that address for some period during the applicable tax year." S.C. Code Ann. § 12-43-220(c)(2)(i). The term "legal residence" means "the permanent home or dwelling place owned by a person and occupied by the owner thereof and where he or she is domiciled." S.C. Code Ann. Regs. 117-1800.1(2); *see also Phillips v. S.C. Tax Comm'n*, 12 S.E.2d 13, 16 (S.C. 1940) ("[N]o sound distinction can be drawn between 'legal residence' and 'domicile.' The term 'domicile' means the place where a person has his true, fixed and permanent home and principal establishment, to which he has, whenever he is absent, an intention of returning."). As part of the application process, an applicant must provide "a copy of the owner-occupant's most recently filed South Carolina individual income tax return," "copies of South Carolina motor vehicle registrations for all motor vehicles registered in the name of the owner-occupant and registered at the same address of the four percent domicile," and any other proof required by the county

assessor. S.C. Code Ann. § 12-43-220(c)(2)(iv). The homeowner must also certify, under penalty of perjury, that (1) the property is the owner's legal residence and where the owner is domiciled, (2) neither the owner nor any member of the owner's household "claim to be a legal resident of a jurisdiction other than South Carolina for any purpose," and (3) neither the owner nor any member of the owner's household claim the 4% assessment ratio on another residence. *Id.* § 12-43-220(c)(2)(ii).

As is evident from this statutory scheme, a homeowner in Patrick Square cannot receive the 4% assessment ratio unless the Pickens County assessor determines that the owner is domiciled in South Carolina. Thus, Plaintiffs' evidence that 73.3% of Patrick Square homeowners receive the 4% assessment ratio leads the Court to conclude that it is more likely than not that more than two-thirds of the proposed class are South Carolina citizens.

In resisting this conclusion, the Developer Defendants argue that the tax records provided by Plaintiffs do not offer any insight "about the domicile of [c]lass members who live in [r]esidences with multiple owners." ECF No. 45-1 at 13. They offer a hypothetical in which one spouse moves out of a jointly owned residence and relocates to another state, while the other spouse remains in the residence and claims the owner-occupied tax rate. *Id.* In this scenario, the Developer Defendants contend, the tax records would incorrectly suggest that both spouses are still domiciled in South Carolina, even though only one of them continues to live in the state. *Id.* This argument, however, is not persuasive. For one thing, Plaintiffs are not "required to prove class citizenship with mathematical certainty." *Doe v. Georgetown Synagogue-Kesher Israel Congregation*, 118 F.Supp.3d 88, 95 (D.D.C. 2015). For another, in the case of the hypothetical spouse,

12

the burden would rest with the Developer Defendants to show that the spouse has established a new domicile outside South Carolina. *Reddy v. Buttar*, 38 F.4th 393, 400 (4th Cir. 2022) ("[O]nce established, a domicile 'is presumed to continue until it is shown to have been changed,' with the burden of proof residing with the person claiming the domicile has changed." (quoting *Mitchell v. United States*, 88 U.S. 350, 353 (1874))). Finally, the Court notes that the 73.3% figure does not account for Patrick Square homeowners who claim the 4% assessment ratio on another home in the state. *Cf. Crout v. Cox Indus., Inc.*, No. 3:22-cv-2417-JFA, 2022 WL 22859457, at *2 (D.S.C. Nov. 2, 2022) ("'A court may employ common sense and reasonable inferences in assessing whether the CAFA citizenship exceptions apply.'" (quoting *Georgetown Synagogue-Kesher Israel Congregation*, 118 F.Supp.3d at 95)). If these homeowners were included, the actual percentage of class members who are South Carolina citizens could be much higher. In any event, the Court is satisfied that Plaintiffs have carried their burden in establishing the two-thirds citizenship requirement.

### 2. At least one significant defendant is a South Carolina citizen.

The local controversy exception also requires Plaintiffs to show that at least one defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted" is a "citizen of the state in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(II). The Court agrees with Plaintiffs that JMC Homes satisfies all three criteria.

First, JMC Homes qualifies as a South Carolina citizen because it is organized under South Carolina law. ECF Nos. 1-2 at 7; 19-4 at 2. For CAFA purposes, an "unincorporated association," including a limited liability company, is "deemed to be a

13

citizen of the State where it has its principal place of business and the State under whose laws it is organized." *Id.* § 1332(d)(10); *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 700 (4th Cir. 2010).

Second, JMC Homes' "alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb). The "significant basis" provision requires the Court to "compar[e] the local defendant's alleged conduct to the alleged conduct of all the [d]efendants." *Russo v. Eastwood Constr. Partners, LLC*, No. 2:22-cv-1686-DCN, 2023 WL 2386453, at *16 (D.S.C. Mar. 7, 2023) (quoting *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 156 (3d Cir. 2009)). "If the local defendant's alleged conduct is a significant part of the alleged conduct of all the [d]efendants, then the . . . provision is satisfied." *Kaufman*, 561 F.3d at 156.

Here, the amended complaint alleges that JMC Homes, along with JMC Communities and Patrick Square, LLC, collectively "designed, developed, constructed, marketed[,] and sold" the Plaintiffs' residences and other homes in Patrick Square. ECF No. 1-2 at 8. It also alleges that all defendants, including JMC Homes, were negligent in "plan[ning] for the construction of the [r]esidences"; "procur[ing] . . . civil, structural, and architectural plans"; "coordinat[ing] the subcontractors"; and "design[ing] and construct[ing]" key components of the homes. *Id.* at 22–23. And the amended complaint claims that by "designing, developing, construct[ing,] and selling the [r]esidences in a defective manner," Defendants breached the implied warranties of habitability and workmanlike service. *Id.* at 24. Although the amended complaint broadly attributes these actions to "the Developer Defendants" and "the Defendants" without specifying JMC Homes' exact role, the Court finds the significant basis requirement met. *Cf. Kress Stores*

14

*of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc.*, 121 F.4th 228, 243 (1st Cir. 2024) (finding the requirement met even though the "local and non-local defendants were referred to jointly by a collective noun that was the subject of all the allegations of the conduct forming the basis of the plaintiffs' claims"); *Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1013 (9th Cir. 2011) (finding the requirement met even though the complaint "referred to actions taken by 'Defendants,' rather than actions taken separately by [the non-local defendant] or [the local defendant]").

In their briefing, Plaintiffs assert that JMC Homes was "the general contractor of record for the homes in question" and "the only entity responsible for pulling all of the permits for construction." ECF No. 19-1 at 4, 14. The Developer Defendants do not dispute these assertions and have previously acknowledged that JMC Homes served as the general contractor and builder for 236 out of 265 single-family homes at Patrick Square. ECF No. 14-1 at 4. Given this — and given that the vast majority of the named Defendants are subcontractors responsible for specific scopes of work — it is evident that JMC Homes is "not just a peripheral defendant" but instead a "primary focus" of Plaintiffs' claims. S. Rep. No. 109-14, at 40 (2005).

Third, and finally, JMC Homes is a defendant "from whom significant relief is sought by members of the plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa). The amended complaint asserts that the Developer Defendants "functioned as a single business enterprise such that the actions, obligations, and liabilities of one [defendant] apply to the others." ECF No. 1-2 at 8. Further, the proposed class seeks damages jointly and severally from all defendants. *Id.* at 25. "Numerous courts have held that a local defendant subject to joint and several liability qualifies . . . as a defendant 'from whom

15

significant relief is sought by members of the plaintiff class.'" *Moore v. IOD Inc.*, No. 14-cv-8406 (VSB), 2016 WL 8941200, at *6 (S.D.N.Y. Mar. 24, 2016); *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1160–61 (11th Cir. 2021) (holding that plaintiffs sought significant relief from a local defendant where "the complaint [sought] joint and several liability against both [defendants] for all damages" and alleged a "scheme that contemplate[d] each [d]efendant as equally culpable" (internal quotation marks omitted)); *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1244–45 (10th Cir. 2009) (finding the significant relief requirement met "where the petition claim[ed] that every potential plaintiff [was] entitled to recover from [the local defendant] and the proposed class [sought] to collect damages from all defendants jointly and severally" (internal quotation marks omitted)).

### 3.  The class's principal injuries were incurred in South Carolina.

Next, there is no dispute that the "principal injuries resulting from the alleged conduct . . . were incurred in" South Carolina.  28 U.S.C. § 1332(d)(4)(A)(i)(III).  This case arises from the "design, development, construction, marketing, sale[,] and/or attempted repair" of homes in a single neighborhood in Pickens County.  ECF No. 1-2 at 14.

### 4.  No similar class actions have been filed against Defendants.

Finally, neither side has identified any other class action filed in the last three years "asserting the same or similar factual allegations against any of the defendants," and the Court's research has not uncovered one either.  28 U.S.C. § 1332(d)(4)(A)(ii).

\*     \*     \*

Plaintiffs have carried their burden of proving that CAFA's local controversy exception applies.  Accordingly, the Court must abstain from exercising jurisdiction.

## IV. CONCLUSION

For the reasons discussed above, Plaintiffs' motion to remand [19] is **GRANTED**.

This matter is remanded to the Pickens County Court of Common Pleas.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.<br>
United States District Judge

January 14, 2025<br>
Spartanburg, South Carolina